UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MEGRDITCHIAN,<br><br>                              Plaintiff,<br><br>v.<br><br>MARTIN J. O'MALLEY, Commissioner of Social Security Administration,<br><br>                              Defendant. | Case No.: 3:23-cv-01734-H-DEB<br><br>**ORDER AFFIRMING THE COMMISSIONER OF SOCIAL SECURITY'S FINAL DECISION**<br><br>[Doc. No. 11.] |

On September 19, 2023, Plaintiff David Megrditchian ("Plaintiff") filed a complaint against Defendant Martin J. O'Malley, Commissioner of Social Security ("Defendant"),[1] seeking judicial review of an administrative denial of disability benefits under the Social Security Act pursuant to 42 U.S.C. § 405(g).  (Doc. No. 1, Compl.)  On November 17, 2023, Defendant filed an answer to Plaintiff's complaint and a certified administrative record.  (Doc. No. 9.)  On December 18, 2023, Plaintiff filed an opening brief.  (Doc. No. 11.)  On January 17, 2024, Defendant filed a response in opposition to Plaintiff's brief.  (Doc. No. 13.)  On January 30, 2024, Plaintiff filed a reply.  (Doc. No. 14.)

---

[1] Plaintiff's complaint originally named Kilolo Kijakazi, Acting Commissioner of Social Security, as the defendant in this action.  (Doc. No. 1, Compl. at 1.)  Defendant O'Malley was sworn in as Commissioner of Social Security on December 20, 2023.  Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is therefore automatically substituted in as the defendant in this action.

1

On November 20, 2023, the Court, pursuant to its discretion under Local Rule 7.1(d)(1), submitted the matter on the parties' papers. (Doc. No. 10.) For the reasons below, the Court affirms the Commissioner's final decision.

## BACKGROUND

On April 26, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Administrative Record ("AR") 239–45.) On May 9, 2021, Plaintiff filed a Title XVI application for supplemental security income. (AR 232–38.) Both claims were denied initially on August 12, 2021, (AR 146–53), and again upon reconsideration on November 12, 2021, (AR 156–61). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held an online video hearing on June 30, 2022.[2] (AR 34–36, 167–68, 206–23.) Plaintiff was represented by counsel at the hearing, and Mr. Bernard Preston, an impartial vocational expert, also appeared at the hearing. (AR 17.)

On September 29, 2022, the ALJ issued a written decision finding Plaintiff not disabled. (AR 17–29.) "To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation." Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing 20 C.F.R. § 404.1520). The five-step inquiry asks:

> (1) whether the claimant is presently engaging in substantially gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantially gainful activity.

Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4)).

At step one of the five-step sequential evaluation, the ALJ determined that Plaintiff

---

[2] Plaintiff consented to holding the hearing by online video due to the COVID-19 pandemic. (AR 198–99, 204–5.)

had not engaged in substantial gainful activity since December 1, 2019, the amended alleged onset date. (AR 20.) At step two, the ALJ determined that Plaintiff had the following severe impairments: major depressive disorder, anxiety disorder, and obsessive-compulsive disorder. (AR 20–21.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (AR 21–23.)

Before proceeding to step four of the inquiry, the ALJ preformed a residual functional capacity ("RFC") assessment, and the ALJ determined that Plaintiff has the RFC to perform a range of work at all exertional levels but with the following nonexertional limitations: Plaintiff can understand, remember, and carry out simple instructions; can tolerate occasional interaction with coworkers; can tolerate no interaction with the general public, and can tolerate few workplace changes. (AR 23–26.) At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (AR 27.) At step five and upon consideration of Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 27–28.) Finally, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2019, the alleged onset date, through the September 29, 2022, the date of the ALJ's decision. (AR 28.)

On September 29, 2022, Plaintiff requested review of the ALJ's decision with the Social Security Appeals Council. (AR 7–13.) On July 19, 2023, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (AR 1–6.) On September 19, 2023, Plaintiff filed a complaint in this Court, seeking judicial review of the Appeals Council's denial pursuant to 42 U.S.C. § 405(g). (Doc. No. 1, Compl.) By the present motion and briefing, Plaintiff requests that the Court reverse the Commissioner's final decision and remand the case for an award of benefits, or in the alternative, remand this case to the Commissioner for further proceedings. (Doc. No. 11 at 15; Doc. No. 14

at 8.)

# DISCUSSION

## I. LEGAL STANDARD

### A. Standard for Determining Disability

Under the Social Security Act, "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant "shall be determined to be under disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

"To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation." Ford, 950 F.3d at 1148 (citing 20 C.F.R. § 404.1520). "At steps one through four, the claimant retains the burden of proof; at step five, the burden shifts to the Commissioner." Maxwell v. Saul, 971 F.3d 1128, 1130 n.2 (9th Cir. 2020) (citing Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)); see also Parra, 481 F.3d at 746 (This is "consistent with the general rule that '[a]t all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits.'" (quoting Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"At step one, the ALJ must determine if the claimant is presently engaged in a 'substantial gainful activity,' defined as 'work done for pay or profit that involves significant mental or physical activities.'" Ford, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1520(a)(4)(i), and Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001)). If the ALJ determines that the claimant is engaged in substantially gainful activity, the ALJ will find

the claimant not disabled.  See 20 C.F.R. § 404.1520(a)(4)(i), (b).

"At step two, the ALJ decides whether the claimant's impairment or combination of impairments is 'severe,' meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'"  Ford, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1520(a)(4)(ii), and Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005)).  If none of claimant's impairments are severe, the ALJ will find the claimant not disabled.  See 20 C.F.R. § 404.1520(a)(4)(ii), (c).

"At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of any of the impairments listed in the 'Listing of Impairments.'"  Ford, 950 F.3d at 1148 (citing 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A)).  "If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled." Id. at 1149 (citing 20 C.F.R. § 404.1520(d)).

"If the claimant does not meet or equal a listing, the ALJ proceeds to step four, where the ALJ assesses the claimant's residual functional capacity (RFC) to determine whether the claimant can perform past relevant work, which is defined as 'work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it.'" Id. (quoting 20 C.F.R. §§ 404.1520(e), 404.1560(b)(1)).  A claimant's RFC is the most a claimant can do despite the claimant's physical and mental limitations caused by a claimant's impairments and any related symptoms.  20 C.F.R. § 404.1545(a)(1); see Ford, 950 F.3d at 1149 n.3.  If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled.  Ford, 950 F.3d at 1149 (citing 20 C.F.R. § 404.1520(f)).

If the claimant cannot perform their past relevant work, the ALJ proceeds to step five and considers the claimant's RFC, age, education, and work experience to determine if the claimant can make an adjustment to other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(v), (g); see also Tackett, 180 F.3d at 1100–01.  If the claimant can make an adjustment to other work, the ALJ will find

claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the ALJ will find the claimant disabled. Id.

### B. Standard of Review

Unsuccessful applicants can seek judicial review of a final decision by the Commissioner. 42 U.S.C. § 405(g). This Court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. See id.

"[F]ederal court review of social security determinations is limited." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). Upon review, the district court must affirm the Commissioner's decision if it was supported by substantial evidence and based on proper legal standards. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); see Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "'Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)); see Biestek, 139 S. Ct. at 1154. In reviewing for substantial evidence, a court "'must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.'" Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). "However, if 'the evidence is susceptible to more than one rational interpretation, [a reviewing court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.'" Id. (quoting Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)); see Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).

Further, even when the ALJ commits legal error, the reviewing court must uphold the decision where that error is harmless. Treichler, 775 F.3d at 1099. "An error is harmless if it is 'inconsequential to the ultimate nondisability determination,' or 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity.'" Id. (citations omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Molina, 674 F.3d at 1111 (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)). "Overall, the standard of review is 'highly deferential.'" Rounds, 807 F.3d at 1002.

## II. ANALYSIS

On appeal, Plaintiff contends that the Commissioner's final decision should be reversed for two reasons: (1) the ALJ's RFC determination is defective because the RFC did not accommodate for several of Plaintiff's moderate limitations; and (2) the ALJ failed to offer any specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony. (Doc. No. 11 at 5–14.) In response, Defendant argues that the Court should reject Plaintiff's claims and affirm the ALJ's decision. (Doc. No. 13 at 8.) Defendant argues that (1) the RFC is not defective because it accommodated all of the prior administrative findings that were contained in the narrative portions of the assessments; and (2) the ALJ reasonably discounted Plaintiff's subjective testimony because it conflicted with his medical record. (Id. at 2–8.) The Court addresses each argument in turn below.

### A. The ALJ's Residual Functional Capacity Determination

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record." Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (quotations omitted). The RFC "must set out all the limitations and restrictions of the particular claimant." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (citation omitted, emphasis in original). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds, 807 F.3d at 1006; Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ is responsible for translating a claimant's condition and limitations into an RFC that "adequately captures

restrictions" to the claimant's ability to work).  If an "RFC assessment failed to include all of [the claimant's] credible limitations," the RFC is "incomplete."  Bagby v. Comm'r Soc. Sec., 606 F. App'x 888, 890 (9th Cir. 2015); DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991) ("expert's testimony has no evidentiary value" if not based on "all of claimant's limitations").

An ALJ who accords substantial or great weight to a physician's opinion must either incorporate the findings into the RFC or explain why the ALJ chose not to accept them. See, e.g., Martin v. Comm'r of Soc. Sec. Admin., 472 F. App'x 580 (9th Cir. 2012) ("The [ALJ] erred when formulating Martin's [RFC] because the RFC neither incorporated Dr. Steiner's opinion of Martin's work limitations nor gave specific and legitimate reasons for rejecting it."); Neufeld v. Berryhill, 16-CV-03644-VEB, 2018 WL 4739699, at *6 (C.D. Cal. Sept. 30, 2018) ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them."); Padilla v. Colvin, No. 14-CV-01843-PLA, 2015 WL 3849128, at *6 (C.D. Cal. 2015) ("[D]espite the ALJ's assertion that he afforded [physician's] opinion significant weight . . ., the ALJ failed to explain why he apparently rejected and did not include in the RFC determination [physician's] moderate limitations in the ability to perform work activities on a consistent basis without special or additional supervision, and to complete a normal workday or work week due to her mental condition.").

Here, the ALJ determined that Plaintiff has the RFC to perform a range of work at all exertional levels but with the following nonexertional limitations: Plaintiff can understand, remember, and carry out simple instructions; can tolerate occasional interaction with coworkers; can tolerate no interaction with the general public, and can tolerate few workplace changes. (AR 23–26.)  Based on this RFC, the ALJ then determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including jobs as a laundry worker, cleaner, and supply worker. (AR 27–28.) / / /

At the initial application stage, Jay S. Flocks, M.D., opined that Plaintiff had the following limitations:

- Moderate limitations in the ability to maintain attention and concentration for extended periods;
- Moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitations in the ability to work in coordination with or in proximity to others without being distracted by them;
- Moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Moderate limitations in the ability to interact with the general public;
- Moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitations in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate limitations in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- Moderate limitations in the ability to respond appropriately to changes in the work setting; and
- Moderate limitations in the ability to travel in unfamiliar places or use public transportation.

(AR 83–85.) The ALJ summarized Dr. Flocks' opinion as follows: "the medical consultant determined that the claimant had moderate mental limitations with a residual functional capacity for unskilled work with limited public contact." (AR 25.)

At the reconsideration stage, Uwe Jacobs, Ph.D., opined that Plaintiff had the following limitations:

- Moderate limitations in the ability to maintain attention and concentration for extended periods;
- Moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitations in the ability to work in coordination with or in proximity to others without being distracted by them;
- Moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Moderate limitations in the ability to interact with the general public;

- Moderate limitations in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitations in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate limitations in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- Moderate limitations in the ability to respond appropriately to changes in the work setting;
- Moderate limitations in the ability to travel in unfamiliar places or use public transportation; and
- Moderate limitations in the ability to set realistic goals or make plans independently of others.

(AR 122–24.)  Dr. Jacobs commented that Plaintiff can "sustain [concentration, persistence, and pace] for simple tasks" and that he can "adapt to infrequent changes, routine settings."  (AR 123, 124.)  The ALJ summarized Dr. Jacobs' opinion as follows: "the medical consultant determined that the claimant had moderate mental limitations with a residual functional capacity to sustain concentration, persistence, or pace for simple tasks, limited contact, and can adapt to infrequent changes, routine settings." (AR 25.)

Further, Stephen Simonian, M.D., assessed Plaintiff as part of a consultative examination and opined that Plaintiff had the following limitations:

- Plaintiff's ability to follow simple oral and written 1 or 2 steps instructions is not limited.
- Plaintiff's ability to follow detailed and complex instructions is mildly limited.
- Plaintiff's ability to interact with the public, coworkers and supervisors is mildly limited.
- Plaintiff's ability to maintain concentration and adaptation for a period of time is not limited.
- Plaintiff's ability to react to stressors common in a workplace environment is mildly limited.
- Plaintiff's ability to maintain regular attendance in the workplace and perform work activities on a consistent basis is mildly limited.
- Plaintiff's ability to perform work activities without special additional supervision is not limited.

(AR 530.)

The ALJ explained that he "[could not] defer or give any specific weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." (AR 26.)  The ALJ then found Dr. Flocks and Dr. Jacobs' opinions "generally persuasive" but found "more persuasive the additional limitations in the reconsideration determination and adopt[ed] them in the residual functional capacity finding." (Id.)  The ALJ reasoned that the additional limitations in the reconsideration determination "are persuasive because they are supported by and consistent with the objective medical evidence, including the mental status examinations discussed above, the conservative outpatient treatment during the relevant period, and the lack of any competing medical opinions demonstrating a greater level of functional limitations." (Id.)

As for Dr. Simonian, the ALJ found his opinion "partially persuasive to the extent that [Plaintiff had] mild limitations in his ability to maintain regular attendance in the workplace and perform work activities on a consistent basis." (AR 26 (citing AR 530).) The ALJ explained that this finding was "supported by Dr. Simonian's unremarkable mental status examination and consistent with the effective medication management treatment of [Plaintiff's] mental symptoms." (AR 26.)  However, the ALJ found "greater moderate mental limitations in other areas of functioning consistent with the DDS reconsideration determination." (Id. (citing AR 112–43).)  And "[a]lthough the representative argued that [Plaintiff] had difficulty sustaining work and maintaining attendance (Ex. 13E/4)," the ALJ "[did] not find evidence to support such limitations and cite[d] to Dr. Simonian's opinion of mild limitations in this area." (Id. (citing AR 530).)

First, Plaintiff argues that the ALJ's RFC is defective because it does not encapsulate the following limitations Dr. Flocks and Dr. Jacobs assessed in this case: (1) moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) moderate limitations in the ability

to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Doc. No. 11 at 7–10.) Specifically, Plaintiff argues that while the ALJ gave weight to Dr. Flocks and Dr. Jacobs' opinions and did not expressly reject these limitations, the ALJ also did not incorporate these limitations into the RFC and thus, the RFC is defective. (Id. at 10.) But Plaintiff is mistaken. Importantly, the ALJ need not incorporate every finding into the RFC. Rather, only when an ALJ accords substantial or great weight to a physician's opinion, the ALJ must either incorporate the findings into the RFC or explain why the ALJ chose not to accept them. See, e.g., Neufeld, 2018 WL 4739699, at *6 ("Having afforded 'great weight' to the opinions of Dr. Bartell and Dr. Loomis, the ALJ was bound to either incorporate their findings as to Plaintiff's limitations or explain why she decided not to accept them."); Padilla, 2015 WL 3849128, at *6 ("despite the ALJ's assertion that he afforded [physician's] opinion significant weight . . ., the ALJ failed to explain why he apparently rejected and did not include in the RFC determination [physician's] moderate limitations in the ability to perform work activities on a consistent basis without special or additional supervision, and to complete a normal workday or work week due to her mental condition").

      As an initial matter, the ALJ explained that he "[could not] defer or give any specific weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." (AR 26.) Thus, the ALJ was not required to incorporate the findings of Dr. Flocks and Dr. Jacobs, including the findings of Plaintiff's moderate limitations in maintaining a regular schedule, completing a normal workday/workweek, and the ability to perform activities within a schedule, into the RFC. See, e.g., Martin, 472 F. App'x at 580; Neufeld, 2018 WL 4739699, at *6; Padilla, 2015 WL 3849128, at *6. Moreover, while the ALJ found Dr. Flocks and Dr. Jacobs' opinions "generally persuasive," the ALJ also explained that he found "more persuasive the additional limitations in the reconsideration determination," which included "moderate limitations due to [Plaintiff's] various depression and anxiety-related impairments and resulting in a residual functional capacity to understand, remember, and carry out simple

instructions, occasional interaction with coworkers, no interaction with the general public, [and] few workplaces changes." (AR 26.) The ALJ reasoned that the additional limitations in the reconsideration determination "are persuasive because they are supported by and consistent with the objective medical evidence, including the mental status examinations discussed above, the conservative outpatient treatment during the relevant period, and the lack of any competing medical opinions demonstrating a greater level of functional limitations." (Id.) Upon review of the ALJ's RFC, the ALJ sufficiently incorporated the additional limitations in the reconsideration determination into the RFC. (See AR 23.) Accordingly, the ALJ did not err in formulating the RFC on this basis.

Next, Plaintiff argues that while the ALJ "found Dr. Simonian's opinion persuasive regarding mild limitations in the ability to maintain regular attendance and perform work on a consistent basis," the ALJ did not address the attendance limitation in the RFC. (Doc. No. 11 at 10.) But again, the ALJ need not incorporate every finding into the RFC. Rather, only when an ALJ accords substantial or great weight to a physician's opinion, the ALJ must either incorporate the findings into the RFC or explain why the ALJ chose not to accept them. See, e.g., Martin, 472 F. App'x at 580; Neufeld, 2018 WL 4739699, at *6; Padilla, 2015 WL 3849128, at *6. Here, the ALJ did not accord substantial or great weight to Dr. Simonian's opinion. (See AR 26 ("As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.").) Rather, the ALJ found Dr. Simonian's opinion "partially persuasive" only to the extent that Plaintiff had mild limitations in his ability to maintain regular attendance in the workplace and perform work activities on a consistent basis. (AR 26.) The ALJ then explained that he found "greater moderate mental limitations in other areas of functioning consistent with the DDS reconsideration determination." (Id. (citing AR 112–43).) And "[a]lthough the representative argued that [Plaintiff] had difficulty sustaining work and maintaining attendance (Ex. 13E/4)," the ALJ "[did] not find evidence to support such limitations and

cite[d] to Dr. Simonian's opinion of mild limitations in this area." (Id. (citing AR 530).) Thus, even if the ALJ gave substantial or great weight to Dr. Simonian's opinion, the ALJ sufficiently explained why he did not incorporate such findings into the RFC. (See id.)

Lastly, Plaintiff argues that a discrepancy exists between Dr. Jacobs' finding that Plaintiff could adapt to "infrequent" changes in a work setting and the RFC limiting Plaintiff to "few" workplace changes. (Doc. No. 11 at 10.) But again, the ALJ did not afford substantial or great weight to Dr. Jacobs' opinion. (AR 26.) And even when substantial or great weight is given to a medical opinion, the ALJ is not required to adopt the opinion word-for-word. See Stubbs-Danielson, 539 F.3d at 1173–75 (reasoning that the RFC need not be identical to a medical opinion, it just needs to be consistent with the evidence considered and interpreted by the ALJ); see also Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010). Here, the RFC is reasonably consistent with Dr. Jacobs' findings. And as Defendant correctly points out, Plaintiff fails to explain any meaningful deviation between the findings and the RFC. (Doc. No. 13 at 4–5.)

Accordingly, the Court rejects Plaintiff's challenge to the ALJ's RFC determination.

### B. Plaintiff's Subjective Symptom Testimony

At the hearing, Plaintiff testified about a variety of subject symptoms relating to his mental health conditions, including his difficulty with leaving home and driving. (AR 44–45, 53–59.) Plaintiff also testified that he took Sertraline for his mental health symptoms and was receiving exposure therapy for his mental health conditions. (AR 47–48, 57–58.) Plaintiff further testified that he last worked in 2015 as an armored car driver before being laid off and is receiving early retirement benefits. (AR 45, 56, 59–60.) In his decision, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms partially consistent with the medical evidence and other evidence in the record. (AR 26.) In reaching this decision, the ALJ considered all of Plaintiff's mental symptoms stemming from his major depressive disorder, anxiety disorder, and obsessive-compulsive disorder. (AR 24.)

Plaintiff argues that the Commissioner's final decision should be reversed because

the ALJ failed to offer any specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony. (Doc. No. 11 at 11–14.) Specifically, Plaintiff takes issue with the fact that the ALJ's decision does not explicitly mention Plaintiff's testimony during the hearing about his ritualistic tendencies. (Id. at 12.) Defendant disagrees, arguing that the ALJ considered all of Plaintiff's complaints of mental symptoms and reasonably discounted Plaintiff's subjective testimony because it conflicted with his medical record. (Doc. No. 13 at 5–8.) The Court agrees with Defendant.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including . . . medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" Robbins, 466 F.3d at 883. The relevant regulation "directs that '[c]areful consideration' be given to any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'" Id. (quoting SSR 96–8p). "When giving such consideration, if the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect." Id.

The Ninth Circuit has "a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." Trevizo, 871 F.3d at 678. First, the "ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. Second, if the claimant satisfies step one, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." Id. If the ALJ finds the claimant's allegations of severity are not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." Smolen, 80 F.3d at 1284. The ALJ's findings must be "'sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony.'" Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)).

When assessing the claimant's credibility, the ALJ may consider a range of factors including: "'(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1284); see also 20 C.F.R. § 404.1529(c). District courts cannot second-guess an ALJ's credibility decision if the ALJ supports the decision with substantial evidence. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162–63 (9th Cir. 2008) (explaining that the reviewing court need not disturb the ALJ's credibility assessment, even where some of the reasons the ALJ provided for discrediting a claimant's testimony were improper, so long as the assessment is supported by substantial evidence); see also Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show his work[.] . . . The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince.").

As an initial matter, the ALJ properly considered all of Plaintiff's mental symptoms stemming from his major depressive disorder, anxiety disorder, and obsessive-compulsive disorder, including his ritualistic tendencies. (See AR 24.) And while Plaintiff is correct that the ALJ did not directly summarize Plaintiff's testimony during the hearing regarding the various rituals he performs, the ALJ frequently referenced and considered Plaintiff's statements concerning his ritualistic tendencies when finding that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were partially consistent with the medical evidence and other evidence in the record. (See AR 24–26.) Thus, the Court declines to reverse the Commissioner's final decision on this basis.

The Court will now consider whether the ALJ properly assessed the credibility of

Plaintiff's symptom testimony under the Ninth Circuit's two-step test. The ALJ began at step one of the analysis by finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 24.) Because the ALJ made this finding at step one, and the ALJ did not find any evidence of malingering in the record, the ALJ could only reject Plaintiff's subjective symptom testimony if he provided "specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678. The ALJ did so here.

As a reason for discounting Plaintiff's subjective symptom testimony, the ALJ concluded that evidence in the record supported a finding that "conservative outpatient mental health treatment is effective in controlling [Plaintiff's] symptoms." (AR 24 (citing AR 112–43).) This is a specific, clear and convincing reason for discounting Plaintiff's symptom testimony. Indeed, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Smartt, 53 F.4th at 499 (citations omitted); see also Parra, 481 F.3d at 751 (explaining that conservative treatment is "sufficient to discount a claimant's testimony regarding severity of an impairment"); Perez v. Colvin, No. 13-CV-01212-H-JLB, 2014 WL 1600322, at * 4 (S.D. Cal. Apr. 18, 2014). And the ALJ supported his reasoning by citing to substantial evidence in the record.

In April 2020, Plaintiff presented to establish care because of a history of obsessive-compulsive disorder. (AR 25 (citing AR 505).) Plaintiff reported trouble leaving his home to drive because of an obsession about his home burning down and worries about items that were plugged in. (Id.) He also reported going through rituals before leaving the house if no one was home. (Id.) Plaintiff reported that he felt depressed and worried that he did not have a job, and he reported symptoms of anxiety and insomnia. (Id.)

In July 2020, Plaintiff reported limiting some of his obsessive-compulsive disorder rituals. (AR 25 (citing AR 474); see also AR 473 ("States he was able to limit this [ritual] and felt 'a little liberated.'").) In August 2020, Plaintiff was successful with his exposure therapy. (AR 25 (citing AR 463–64).)

In December 2021, Plaintiff started taking the prescribed medication Sertraline 25 mg daily for seven days followed by 50 mg daily. (AR 25; see also AR 555.) In February 2022, Plaintiff had no side effects on Sertraline 50 mg daily for treatment of obsessive-compulsive disorder and was increased to 75 mg daily. (AR 25 (citing AR 568); see also AR 569.) Plaintiff's sister also reported an improvement in his mood. (AR 25 (citing AR 568 ("[Sister] is seeing an improvement in Mood which is less anxious and depressed.")).)

In March 2022, Plaintiff reported symptoms of anxiety and depression, low mood, irritability, low energy, poor concentration, pervasive worry, obsessive thoughts with rumination, and compulsive behavior. (AR 25 (citing AR 557).) Plaintiff had no side effects on Sertraline 75 mg daily and was increased to 100 mg daily. (AR 25 (citing AR 556).) Plaintiff also noted less intrusive thoughts. (Id.) Plaintiff's sister reported that the "edge on things has improved" with Sertraline. (Id.) In April 2022, Plaintiff stopped taking his medication for 10 days and his sister reported that he was once again easily agitated and irritable with intermittent sleep disturbances and mood dysregulation. (AR 25 (citing AR 552).) Moreover, at the hearing, Plaintiff admitted to not always taking his Sertraline prescription consistently but testified that he was now better about taking it on a more consistent basis. (AR 47, 48.)

Thus, the ALJ reasonably found that when compliant with treatment, Plaintiff's symptoms, including his ritualistic tendencies, were effectively controlled with medication management and exposure therapy and without need for psychiatric hospitalizations. (Id. (citing AR 445–524, 540–615).) Furthermore, the record contains no evidence that Plaintiff experienced any emergency room visits, psychiatric hospitalizations, suicide attempts, or similar episodes of decompensation. (Id.) And although Plaintiff alleges some ongoing issues with anxiety, depression, obsessive-compulsive disorder symptoms, including his ritualistic tendencies, and some problems with concentration, the evidence in the record shows that his conditions were well-managed with conservative treatment. (AR 25.) As such, the ALJ provided specific, clear and convincing reasons for discounting

Plaintiff's symptom testimony in finding that conservative outpatient mental health treatment is effective in controlling Plaintiff's conditions. See, e.g., Smartt, 53 F.4th at 498; Carmickle, 533 F.3d at 1161; Parra, 481 F.3d at 751.

As an additional reason for discounting Plaintiff's subjective symptom testimony, the ALJ explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 24.) This is a specific, clear and convincing reason for discounting Plaintiff's symptom testimony. See Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Smartt, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). And again, the ALJ supported his reasoning by citing to substantial evidence in the record.

In his decision, the ALJ reasonably relied on Dr. Simonian's findings from his consultative psychiatric evaluation with Plaintiff. During this evaluation, Dr. Simonian noted that Plaintiff was appropriately dressed and groomed, presented in a friendly manner, and interacted appropriately. (AR 25 (citing AR 526–28).) Dr. Simonian further noted that Plaintiff's speech was normal, his thought processes were coherent and organized, and his affect was mildly constricted but appropriate, and his mood was euthymic. (AR 25 (citing AR 528–29).) Dr. Simonian also noted that Plaintiff had no delusions, but he did report some preoccupation with rituals and repeating things, but otherwise his thought content was normal. (AR 25 (citing AR 529).) Dr. Simonian further noted that Plaintiff's intellectual functioning was average and that his ability to follow simple oral and written 1 or 2 steps instructions was not limited. (AR 25 (citing AR 529–30).) Importantly, Dr. Simonian also noted that Plaintiff's ability to maintain concentration and adaptation was not limited. (AR 25 (citing AR 530).) Further, the ALJ also noted that other mental status examinations throughout the record were generally within normal limits. (AR 25 (citing AR 445–524, 540–615); see also AR 558, 570–71 (mental status examinations

noting pleasant demeanor, cooperative, stable mood, full affect, normal emotional reactivity, and normal thought process and thought content).) As such, the ALJ provided a specific, clear and convincing reason for discounting Plaintiff's symptom testimony by citing to medical evidence in the record that was inconsistent with Plaintiff's subjective testimony. See, e.g., Stubbs-Danielson, 539 F.3d at 1175 ("[T]he medical evidence, including Dr. Eather's report and Dr. Neville's report—which both found Stubbs–Danielson could perform a limited range of work—support the ALJ's credibility determination."); Klein v. Berryhill, 717 F. App'x 664, 666 (9th Cir. 2017) (finding ALJ properly discounted claimant's symptom testimony because it was inconsistent with the medical opinion evidence); Klick v. Saul, 820 F. App'x 656, 657 (9th Cir. 2020) ("The ALJ performed the required two-step analysis and provided specific, clear and convincing reasons for his finding by citing the medical record . . . .").

In light of the above, there is substantial evidence in the record to support the ALJ's discounting of Plaintiff's subjective symptom testimony. See Carmickle, 533 F.3d at 1162–63 (explaining that the reviewing court need not disturb the ALJ's credibility assessment, even where some of the reasons the ALJ provided for discrediting a claimant's testimony were improper, so long as the assessment is supported by substantial evidence).

## CONCLUSION

For the foregoing reasons, the ALJ did not commit reversible error in formulating the RFC and discounting Plaintiff's subjective symptom testimony. As such, the ALJ's disability determination must be upheld. Accordingly, the Court affirms the Commissioner's final decision.

**IT IS SO ORDERED.**

DATED: September 9, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT